UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAREY VAUGHN,<br><br>                 Plaintiff,<br><br>        v.<br><br>TRANSIT EMPLOYEES FEDERAL<br>CREDIT UNION, *et al.*,<br><br>                 Defendants. | Civil Action No. 22-cv-45 (BAH)<br><br>Chief Judge Beryl A. Howell |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Carey Vaughn has identified a host of alleged errors in his credit report and brings the instant suit against various credit reporting agencies (CRAs) and the furnishers of the credit information containing those errors for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, and Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, and for defamation.  Second Amended Compl. (SAC) ¶¶ 3–7, 8, 90–151, ECF 46. One of those furnishers is defendant CommonWealth One Federal Credit Union ("CommonWealth"), which has moved, under Federal Rule of Civil Procedure 12(b)(6), to dismiss the two claims asserted against it, arguing that plaintiff has failed to state a claim upon which relief may be granted.  Def.'s Mot. Dismiss ("Def.'s Mot."), ECF 51.  For the reasons explained below, defendant's motion will be granted in part, as to plaintiff's defamation claim, and denied in part, as to plaintiff's FCRA claim.

I.   **BACKGROUND**

According to plaintiff, his credit report is riddled with factual inaccuracies, which artificially lowers his credit score and harms him when CRAs furnish or sell his report to third

parties, who may be making decisions based on the erroneous information. SAC ¶¶ 8, 17–18, 31, 48, 66, 80, 89, 98.

As relevant here, one of these alleged inaccuracies is that plaintiff's payment status on a debt to CommonWealth was past due, when in fact plaintiff's account with CommonWealth "was paid and in good standing when the account was closed." *Id.* ¶¶ 4, 32–35. As with the other alleged inaccuracies, plaintiff sent dispute letters to CRAs, and the CRAs in turn forwarded notice of plaintiff's dispute for CommonWealth to investigate. *Id.* ¶¶ 36–38. Plaintiff alleges that "[t]he CRAs forwarded Plaintiff's dispute by way of an [Automated Credit Dispute Verification form ("ACDV")] that summarized the dispute in an insufficient manner that failed to fully and accurately convey Plaintiff's dispute," and although they also attached the original dispute letter, "the CRAs know [CommonWealth] relies on the information in the ACDV and does not view the dispute letter." *Id.* ¶¶ 39–40. CommonWealth "received the ACDV and merely confirmed that the disputed information was being reported consistently to the CRAs," but "did not investigate whether the disputed information was accurate or not" and "did not report that the account was disputed." *Id.* ¶¶ 43–45. The CRAs accepted this response and continued to include the erroneous information regarding the CommonWealth account in plaintiff's credit report. *Id.* ¶ 46.

Plaintiff brought suit in the Superior Court of the District of Columbia against Transit Employees Federal Credit Union, which is allegedly responsible for another inaccurate item on plaintiff's credit report, and three CRAs for three violations of the FCRA. *See* Compl. ¶¶ 3–6, 20–57, ECF No. 1-2. Defendants removed the action to this court on the basis of federal question jurisdiction. Defs.' Notice of Removal ¶¶ 4–5, ECF No. 1. Plaintiff then amended his complaint following one defendant's motion to dismiss, as permitted as a matter of course by

Federal Rule of Civil Procedure 15(a)(1)(B). *See* Def. TEFCU's Mot. to Dismiss, ECF 19; First Amended Compl. (FAC), ECF No. 24. That first amended complaint introduced two new defendants, including CommonWealth, substantially expanded upon the original factual allegations, and added two additional counts under the FCRA and the FDCPA. *See* FAC Redline, ECF No. 24-1.

CommonWealth moved to dismiss the FAC. Def. CommonWealth's Mot. to Dismiss, ECF 43. Once again, plaintiff responded by amending his complaint. *See* SAC;[1] Min. Order (July 21, 2022); Min. Order (August 11, 2022); Min. Order (August 22, 2022) (allowing the second amended complaint to stand). The Second Amended Complaint elaborated upon the factual allegations as they related to CommonWealth's liability and added a sixth claim, this time for defamation. *See* SAC Redline, ECF No. 46-1.

As before, CommonWealth moved to dismiss the new complaint for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6), which motion is now ripe for review. *See* Def.'s Reply Supp. Mot. Dismiss ("Def.'s Reply"), ECF No. 56.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[a] plaintiff need not make 'detailed factual allegations,'" but the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *VoteVets Action Fund v. United States Dep't of Veterans Affs*, 992 F.3d 1097, 1104 (D.C. Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

---

[1]   Plaintiff incorrectly titled this second amended complaint as his "first" and it will be referred to correctly here.

at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)).  *See also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).

In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555; *see also Atchley, v. AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022).  Courts do not, however, "assume the truth of legal conclusions, nor do [they] 'accept inferences that are unsupported by the facts set out in the complaint.'"  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citation omitted) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)).

### III.   DISCUSSION

Plaintiff's Second Amended Complaint brings six counts, SAC ¶¶ 90–151, two of which are asserted against defendant CommonWealth.  *See id.* ¶¶ 116–30, 144–51.  As discussed in turn below, the factual allegations in the complaint, accepted as true, plausibly establish plaintiff's entitlement to relief on his FCRA claim against CommonWealth, but fall short as to his defamation claim, and as such only the latter claim will be dismissed under Rule 12(b)(6).

####     A.    Count III: Violation of the Fair Credit Reporting Act

The FCRA is meant to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (citations omitted).  Pursuant to 15 U.S.C. § 1681s-2(b), which provides for a private right of action for violations of that section, *Mazza v. Verizon Washington DC, Inc.*, 852 F. Supp. 2d 28, 34 (D.D.C. 2012), "upon being notified by a credit reporting agency of a dispute as to the accuracy of its information, the furnisher of information to a credit reporting agency has duties under [the FCRA] to investigate the disputed information and correct it as necessary," *Renford v.*

*Cap. One Auto Fin.*, No. 21-cv-2382 (RC), 2022 WL 1211193, at *4 (D.D.C. Apr. 25, 2022) (quoting *Haynes v. Navy Fed. Credit Union*, 52 F. Supp. 3d 13, 19 (D.D.C. 2014)). Plaintiff alleges that CommonWealth failed to conduct a reasonable investigation and modify the inaccurate information after being notified of plaintiff's dispute, in violation of its duties under that section. SAC ¶¶ 116–30.

"To make out a § 1681s-2(b) claim against a furnisher," like CommonWealth, "a plaintiff must establish that: (1) he notified a CRA of a dispute related to his credit information; (2) the CRA then notified the furnisher of the information about the dispute; and (3) the furnisher failed to fulfill the obligations enumerated in § 1681s-2(b)(1)," including, as most relevant here, to perform a reasonable investigation into plaintiff's dispute. *Mosley v. Bank of Am., N.A.*, No. 20-cv-3065 (CKK), 2021 WL 4243406, at *3 (D.D.C. Sept. 17, 2021) (citing *Mazza*, 852 F. Supp. 2d at 35). Only the third element is at issue here. *See* Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem.") at 3, ECF 51-1.

Plaintiff argues, first, that his allegations are sufficient to establish that CommonWealth's investigation into plaintiff's disputed account after they received the ACDV forwarded by the CRAs fell short of "reasonable" as required under § 1681s-2(b)(1)(A) and (B). Pl.'s Opp'n Mot. Dismiss ("Pl.'s Opp'n") at 2, ECF 55. In particular, the SAC alleges that "[h]ad [CommonWealth] reviewed—and not ignored—Plaintiff's dispute letter, which was attached to the ACDV that [CommonWealth] received, then [CommonWealth] could have gained a better understanding and a clearer picture of Plaintiff's dispute," but that CommonWealth, by relying on the ACDV exclusively, "deliberately chose not to review or consider Plaintiff's dispute" because it "did not want to invest more time and resources into investigation." SAC ¶¶ 40–42. He bolsters his claim with allegations "[o]n information and belief" that CommonWealth "rarely,

if ever, consider[s] the merits of the dispute and never actually investigate[s] the matters complained of." *Id.* ¶ 123.

Some of these allegations—notably, those made "on information and belief" regarding CommonWealth's general policy of "never actually investigat[ing]" disputes, *see id.* ¶¶ 123, 126—amount to inferences that cannot be credited at this stage without supporting factual allegations that would allow them to be reasonably drawn. *See Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021). Leaving these allegations aside, those that remain nonetheless sufficiently allege that CommonWealth failed to conduct a reasonable investigation into plaintiff's particular dispute, and as such survive CommonWealth's motion to dismiss. Plaintiff specifically alleges that CommonWealth received but did not review his dispute letter at all, and as a result remained ignorant of the true nature of his dispute. SAC ¶ 41. While the precise contours of a "reasonable" investigation are highly fact-dependent and "[t]he conduct sufficient within one circumstance may be insufficient within another," *Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 851 (E.D. Va. 2017) (internal quotation omitted), plaintiff's allegations that CommonWealth chose to ignore readily available materials that were clearly germane to the dispute plausibly establish that the investigation was deficient under the circumstances. *See, e.g.*, *Donald Marshall Berlin v. Bank of Am., N.A.*, 101 F. Supp. 3d 1, 23–24 (D.D.C. 2015) (concluding that it was "enough for now" at the motion to dismiss stage that plaintiff alleged that defendant "failed to conduct a reasonable investigation . . . as evidenced by its continued furnishing of the same inaccurate information" after being notified of a dispute, even though precise details of the notices and investigations were lacking).

CommonWealth argues that, even if the allegations otherwise establish the unreasonability of its investigation, plaintiff effectively pleads himself out of a valid claim by

6

also alleging that the ACDV prepared by the CRAs and furnished to CommonWealth "summarized the dispute in an insufficient manner that failed to fully and accurately convey Plaintiff's dispute." SAC ¶ 39.  If the notice of the dispute was itself defective, it argues, CommonWealth cannot be liable for the ensuing inadequate investigation.  Def.'s Mem. at 3–4.  While the D.C. Circuit has not addressed the issue, other Courts of Appeals have indeed held that "the reasonableness of a furnisher's investigative procedure" depends on "the content of the notice of dispute sent by the CRA to the furnisher." *See Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) (collecting cases).  For example, "where a given notice contains only scant or vague allegations of inaccuracy, a more limited investigation may be warranted." *Id.*  Further, "[w]hether a furnisher's investigation is reasonable will depend in part on . . . the quality of documentation available to the furnisher" and on "what the furnisher knows about the dispute." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302, 1306 (11th Cir. 2016).

These principles only carry CommonWealth so far, however.  The allegedly deficient ACDV was not the only documentation of the dispute CommonWealth had at hand—plaintiff alleges that his dispute letter was included in the notice sent by the CRAs.  A cursory or misleading ACDV may have set CommonWealth up to perform only a limited investigation, but would not have absolved CommonWealth of the responsibility to, at a minimum, look at the attached dispute letter.  "A furnisher may not 'truncate its investigation simply because the CRA failed to exhaustively describe the dispute,'" for "'the plain meaning of "investigation" clearly requires some degree of careful inquiry by creditors.'" *Wood*, 277 F. Supp. 3d at 851 (quoting *Hinkle*. 827 F.3d at 1306; *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430 (4th Cir. 2004).  Simply relying upon an allegedly deficient ACDV without even reviewing the attached documentation, as plaintiff specifically alleges, does not amount to a reasonable investigation

7

under the circumstances, and as a result plaintiff successfully states an FCRA claim based on CommonWealth's failure to investigate.

Plaintiff also argues for an independent theory of liability, in that CommonWealth did not fulfill its obligation under § 1681s-2(b)(1)(C), (D), and (E) to "report that the account was disputed" to the CRAs. Pl.'s Opp'n at 3; SAC ¶ 45. Regardless of whether those subsections actually impose such a duty—which defendant disputes, Def.'s Reply at 7—the remaining allegations in the SAC negate any possibility that CommonWealth's failure to report the dispute to the CRAs could have caused plaintiff an injury, as required for Article III standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (explaining that as part of the "irreducible constitutional minimum of standing . . . plaintiff must have . . . suffered an injury in fact . . . that is fairly traceable to the challenged conduct of the defendant" (internal quotations omitted)). Plaintiff specifically alleges that he "sent dispute letters to CRAs wherein he disputed the [CommonWealth] tradeline" and that the CRAs duly acted upon those letters. SAC ¶¶ 36–37, 39. As a result, the CRAs already had notice of the disputed account; indeed, they are the ones who alerted CommonWealth itself to the dispute. *See id.* ¶¶ 36–40. The fact that CommonWealth did not parrot back to the CRAs that there was a dispute regarding plaintiff's account therefore could not have caused plaintiff injury, and he lacks standing to pursue his FCRA claim predicated on this theory for an alleged violation.

Nonetheless, because plaintiff plausibly establishes entitlement to relief on his FCRA claim against CommonWealth on the basis that this furnisher fell short of its obligation reasonably to investigate his dispute, CommonWealth's motion to dismiss this claim under rule 12(b)(6) is denied.

### B.     Count VI: Defamation

CommonWealth raises three independent reasons why plaintiff's defamation claim, newly added in his Second Amended Complaint, must fail. *See* Def.'s Mem. at 5–6. Rather than respond to these bases for dismissal, plaintiff chose to withdraw his defamation claim entirely. *See* Pl.'s Opp'n at 7. He nonetheless requests that the dismissal of his defamation claim be "without prejudice," so that he can go on "to file this claim in Maryland, which is where he was harmed by [CommonWealth]'s defamation." *Id.* CommonWealth counters that any such subsequent suit would violate the rule against claim splitting, which "requires that all claims arising out of a single wrong be presented in one action." Def.'s Reply at 3 (quoting *Dorsey v. Jacobson Holman PLLC*, 764 F. Supp. 2d 209, 212-13 (D.D.C. 2010)).

A hypothetical future state court defamation suit may well be barred by the rule against claim splitting, but that conclusion will depend on the particulars of plaintiff's subsequent defamation claim, and as such cannot be reached in this case's current posture. *See Hudson v. Am. Federation of Gov't Employees*, 308 F. Supp. 3d 388, 394 (D.D.C. 2018) ("To determine whether a plaintiff is claim-splitting, [t]he proper question is whether, assuming the first suit was already final, the second suit would be precluded under res judicata analysis" (internal quotation omitted)). Nonetheless, dismissal with prejudice remains appropriate. "The FCRA expressly preempts all state law claims 'with respect to any subject matter regulated under . . . section 1681s-2 . . . relating to the responsibilities of persons who furnish information to consumer reporting agencies.'" *Pleznac v. Equity Residential Mgmt.*, 320 F. Supp. 3d 99, 107 (D.D.C. 2018) (quoting 15 U.S.C. § 1681t(b)(1)(F)). Plaintiff's claim for defamation "falls squarely within the FCRA's preemption provision," as "[a]ll of [CommonWealth]'s allegedly defamatory

9

statements were reports of credit-related information," and it is precisely those statements that plaintiff also contends violated the FCRA. *See id.*; SAC ¶¶ 144–51.

Accordingly, plaintiff's defamation claim against CommonWealth is dismissed under Rule 12(b)(6).

## IV. CONCLUSION AND ORDER

For the foregoing reasons, plaintiff has plausibly established an entitlement to relief on his FCRA claim but not his defamation claim against defendant CommonWealth One Federal Credit Union, necessitating dismissal of the defamation claim, under Rule 12(b)(6), for failure to state a claim. Accordingly, it is therefore

**ORDERED** that defendant CommonWealth One Federal Credit Union's Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. 51, is **GRANTED IN PART AND DENIED IN PART**; it is further

**ORDERED** that defendant's Motion is **GRANTED** as to plaintiff's defamation claim in Count VI, which is **DISMISSED with prejudice**; it is further

**ORDERED** that defendant's Motion is **DENIED** as to plaintiff's Fair Credit Reporting Act claim in Count III;

**SO ORDERED.**

Date: January 24, 2023

_____
BERYL A. HOWELL
Chief Judge